# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JAMIE MALONE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. CIV-16-1294-M |
| | ) |
| SELECT SPECIALTY HOSPITAL - | ) |
| OKLAHOMA CITY, INC., | ) |
| | ) |
| Defendant. | ) |

## ORDER

This case is scheduled for trial on the Court's June 2018 trial docket.

Before the Court is defendant's Motion for Summary Judgment, filed April 2, 2018. On April 23, 2018, plaintiff filed her response, and on April 30, 2018, defendant filed its reply. Based upon the parties' submissions, the Court makes its determination.

I.      Introduction

Defendant Select Specialty Hospital – Oklahoma City, Inc. ("SSH") provides long-term acute care to patients with complex or chronic illnesses, or who need specialized treatment. SSH has three floors; the first floor essentially operates as an extended care unit for ICU patients, and chronically-critically ill patients are attended to on the second and third floors of the hospital. Plaintiff Jamie Malone ("Malone"), an African American/Caucasian and Puerto Rican female, was hired by SSH as a full-time Nursing Assistant ("NA") on March 9, 2015. Malone was responsible for performing routine tasks and patient care, bedside nursing and documentation of care provided under the supervision of a Registered Nurse ("RN"). Malone's duties within a patient's room included changing bed linen, removing clutter, discarding trash, and straightening bedside tables.

On or about June 28, 2015, an incident occurred between Malone and RN Theresa Walker ("Walker"). The encounter between Malone and Walker arose after Malone reported a medication issue involving Walker and one of Walker's patients. Walker confronted Malone, was verbally abusive, and bumped Malone's shoulder with hers as Malone left the room. It is undisputed that Walker did not use racial slurs or racially charged words in the encounter on June 28, 2015. This matter was investigated by the Chief Nursing Officer Betty Beaty ("Beaty"). A decision was made by Beaty and John Merkey ("Merkey"), the HR Coordinator for SSH, that Walker should be disciplined in writing. It was also determined that Walker and Malone should be separated and should not be scheduled to work on the same floor.

After the June 28, 2015 incident and Walker was disciplined, Malone approached Beaty and Connie Strickland ("Strickland"), the CEO for SSH, wanting to know why Walker was not terminated. Additionally, on July 8, 2015, Malone called the SSH hotline to report Walker's actions toward her, complaining about Walker still being employed, and reporting that she had encountered hostility from Walker since the encounter. Further, Malone alleges that on July 16, 2015, Walker came to the floor on which Malone was working and called her a "nigger bitch" in the presence of a witness. SSH asserts that neither Merkey, Beaty, Strickland, or any other management or staff ever received a written document or verbal complaint from Malone about the July 16, 2015 incident at any time prior to Malone's termination.

According to SSH, in approximately April of 2015, there was a dramatic increase of theft complaints from SSH patients. A decision was made to begin tracking the thefts against the staff who were identified as being present in the room on the dates of the reported thefts. According to

SSH, both Malone and NA Shelby Barksdale's ("Barksdale")[1] names consistently appeared in the chart Merkey created to track the thefts.

On or about August 24, 2015, an SSH patient made a complaint to RN Tammy Williams regarding actions of Malone and Barksdale when they were in his room and stated that he did not want either Malone or Barksdale in his room again. According to SSH, this patient stated he called the morning of August 24 around 8:00 to 8:30 a.m. to have his bed changed, and Malone and Barksdale came into his room. The patient went into the bathroom, heard a noise, looked out the door, and saw Malone and Barksdale rummaging through his drawers and personal belongings. The patient told Strickland and Beaty that he believed Malone and Barksdale were searching for the cash he had told Malone he had the day before. Malone asserts that she and Barksdale were performing housekeeping duties in the patient's room, did not ransack the room, took nothing from the patient, and did not violate any policy.

Merkey was advised of the patient's complaint. A decision was made to investigate the matter further, and Barksdale and Malone were suspended with pay. At the conclusion of the investigation, and after hearing from both Barksdale and Malone, both Barksdale and Malone were terminated on September 1, 2015.

On November 11, 2016, Malone filed the instant action, alleging two claims against SSH: (1) wrongful termination on the basis of her race, in violation of Title VII, 42 U.S.C. § 1981, and the Oklahoma Anti-Discrimination Act, Okla. Stat. tit. 25, § 1302, et seq., and (2) retaliation against Malone based upon her reports of discriminatory remarks made by Walker. SSH now moves this Court for summary judgment as to both of Malone's claims.

---

[1] Barksdale is a white female.

II.     Summary Judgment Standard

"Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The moving party is entitled to summary judgment where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. When applying this standard, [the Court] examines the record and reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *19 Solid Waste Dep't Mechs. v. City of Albuquerque*, 156 F.3d 1068, 1071-72 (10th Cir. 1998) (internal citations and quotations omitted).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Furthermore, the non-movant has a burden of doing more than simply showing there is some metaphysical doubt as to the material facts. Rather, the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (internal citations and quotations omitted).

III.    Discussion

   A.   Race discrimination claim

When reviewing a race discrimination claim, a court follows the three stage analysis outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, a plaintiff must first establish a prima facie case of race discrimination by showing: (1) membership in a protected class, (2) adverse employment action, and (3) disparate treatment among similarly situated employees. *Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005). For

purposes of this Order, the Court will assume, without deciding, that Malone can state a prima facie case of race discrimination.[2]

If a plaintiff proves a prima facie case of discrimination, the burden of production moves to the defendant to articulate a legitimate, nondiscriminatory reason for its action. *See Crowe v. ADT Sec. Servs. Inc.*, 649 F.3d 1189, 1195 (10th Cir. 2011). Having carefully reviewed the parties' submissions, the Court finds that SSH has satisfied its burden of production and has articulated a legitimate, nondiscriminatory reason for terminating Malone. Specifically, SSH asserts that it terminated Malone based upon the patient's complaint regarding Malone and Barksdale ransacking his room.

Once a defendant meets its burden of articulating a legitimate, nondiscriminatory reason, a plaintiff must then show that her race was a determinative factor in the defendant's employment decision or that the defendant's explanation for its action was merely pretext. *See Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1216 (10th Cir. 2002). A plaintiff may meet this final prong of the *McDonnell-Douglas* test by "showing 'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions' in the employer's stated reason for terminating the employee" or through disparate treatment "by demonstrating that the employer treated employees similarly situated to the plaintiff employee differently (i.e., more favorably)." *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1311 (10th Cir. 2017) (quoting *Macon v. United Parcel Serv., Inc.*, 743 F.3d 708, 714 (10th Cir. 2014)). Further, "[t]he relevant inquiry is not whether [the employer's] proffered reasons were wise, fair or correct, but whether [it] honestly believed those reasons and acted in

---

[2] The Court would note that Malone likely would not be able to show disparate treatment among similarly situated employees because Barksdale, a white female, who was accused of the same conduct, was also terminated.

5

good faith upon those beliefs." *Rivera v. City & Cty. of Denver*, 365 F.3d 912, 924-25 (10th Cir. 2004) (internal quotations and citation omitted).

Having carefully reviewed the parties' submissions, and viewing the evidence in the light most favorable to Malone and viewing all reasonable inferences in Malone's favor, the Court finds that Malone has not submitted sufficient evidence to create a genuine issue of material fact as to whether SSH's legitimate, nondiscriminatory reason for terminating Malone was pretextual. Specifically, the Court finds that Malone has not submitted sufficient evidence showing that SSH's reason for termination – the patient's complaint about Malone and Barksdale ransacking his room – was actually false. Malone has not presented any evidence showing that SSH's reason is so fishy and suspicious that a jury could find that SSH lacks all credibility. Additionally, the Court finds plaintiff has not submitted any evidence showing any weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in SSH's stated reason for terminating Malone. Further, the Court finds that Malone has not submitted sufficient evidence showing that discrimination was a primary factor in SSH's decision to terminate Malone. In fact, the Court finds the evidence submitted shows that the termination was not racially motivated, as both Malone, an African American employee, and Barksdale, a white employee, were concurrently terminated for the same complaint and based upon the same improper conduct.

Accordingly, the Court finds that SSH is entitled to summary judgment as to Malone's race discrimination claim.

### B. Retaliation claim

Malone's retaliation claim also falls under the *McDonnell-Douglas* analysis. *See Crowe*, 649 F.3d at 1195. Assuming that Malone can state a prima facie case of retaliation, the Court, as set forth above, finds that SSH has articulated a legitimate, nonretaliatory reason for terminating

6

Malone. Additionally, for the reasons set forth above, the Court finds that Malone has not submitted sufficient evidence to create a genuine issue of material fact as to whether SSH's legitimate, nonretaliatory reason for terminating Malone was pretextual. Further, the Court finds Malone has not submitted sufficient evidence showing that retaliation was a primary factor in SSH's decision to terminate Malone. Accordingly, the Court finds that SSH is entitled to summary judgment as to Malone's retaliation claim.

IV.     Conclusion

For the reasons set forth above, the Court GRANTS defendant's Motion for Summary Judgment [docket no. 19].

**IT IS SO ORDERED this 7th day of May, 2018.**

/s/ Vicki Miles-LaGrange
VICKI MILES-LaGRANGE
UNITED STATES DISTRICT JUDGE